**Rex MOSES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 3–90–140–CR, 3–90–163–CR and 3–90–164–CR.**

Court of Appeals of Texas, Austin.

July 24, 1991.

Rehearing Overruled Aug. 28, 1991.

Discretionary Review Refused Nov. 6, 1991.

Richard Munzinger, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for appellant.

Giselle Horton, Asst. Co. Atty., Austin, for appellee.

CARROLL, C.J., and JONES and DAVIS,* JJ.

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

Tex.Gov't Code Ann. § 74.003 (1988).

DAVIS, Justice (Retired).

Appeals are taken from three convictions for criminal trespass, Tex.Pen.Code Ann. § 30.05 (1989 & Supp.1991), occurring at clinics where abortions are performed in Austin. After the jury found appellant guilty in cause no. 3–90–140–CR,[1] punishment was assessed by the court at 180 days' confinement and a fine of $1,000.00. In the remaining two causes, trial was before the court and punishment was assessed at 180 days' confinement.

It is undisputed that appellant and others went to the "Ladies Center" in December 1988 (cause no. 3–90–163–CR) and "Reproductive Services" in May and July 1989 (cause nos. 3–90–140–CR and 3–90–164–CR) and blocked the entrance to these clinics with the avowed purpose of slowing down or stopping abortions. We will review the evidence only in instances where it is necessary to the resolution of appellant's points of error.

Appellant utilizes a single brief to assert fifteen points of error in the three causes. Cause nos. 3–90–140–CR and 3–90–164–CR share common points of error. Appellant asserts the court erred in: (1) finding that the defenses of necessity and mistake of fact are not available to appellant; (2) excluding medical testimony relative to the development of the fetus, techniques utilized in performing abortions, their effect on the unborn infant, exhibits reflecting development of the fetus, appellant's testimony relative to abortion, and the relative value of the unborn infant to property; and (3) granting the State's motion to quash appellant's subpoenas. In cause no. 3–90–163–CR, appellant contends that there is no evidence to support findings that he trespassed on property owned by Karen La-Fayette and that he received notice to leave the premises by the owner or one acting with the apparent authority of the owner. We reject appellant's points of error and affirm the judgments of the trial court.

At the outset we note the statement of the court in a similar case, *Reed v. State*, 794 S.W.2d 806 (Tex.App.1990, pet. ref'd).

Writing for the court, Justice Paul Pressler stated:

> Before us are individuals charged with a crime. Most persons so charged have been engaged in activity motivated by selfish or base motives. Such is not the case here. Before this court are individuals who have been motivated by the highest principles. Their concern is assisting other human beings and preserving what they conscientiously believe to be human life. The question before us, however, is not their motivation or the correctness of their convictions. This court must determine solely the question of whether these individuals, however well intentioned, have actually broken a law of the state of Texas in effect at the time of the occurrence in question. No individual, whether he be citizen, lawyer, or judge, is above the law. We must abide by and follow the law as it is and not as we wish it were.

794 S.W.2d at 807.

Except for points of error eight and ten, points one through thirteen assert that the court erred in not charging the jury on the defense of necessity, failing to recognize such defense in the trial before the court, and excluding the doctor's and appellant's testimony. Since the resolution of whether the defense of necessity is available in these causes has a direct bearing on whether the court erred in excluding the proffered testimony, we analyze these points of error together.

■ Appellant contends that the testimony of Dr. Dan Stuckey describing the development of the fetus in the womb, its humanity, the techniques of abortion, the suction curette procedure and its effect on the fetus, an exhibit reflecting the development of the fetus in the womb, and appellant's testimony of his belief in the humanity of the fetus are relevant to the issue of necessity and the court erred in excluding the evidence. Appellant developed the foregoing evidence at a pretrial hearing. Appellant was allowed to offer the doctor's testimony at trial without calling the witness.

1. This Court's cause numbers are used throughout the opinion.

Under Tex.Pen.Code Ann. § 9.22 (1974), the defense of necessity requires a showing that:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing [sic] the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Appellant recognizes that a number of opinions from the Houston Courts of Appeal have held adversely to his position.[2] Since the filing of appellant's brief, *Reed,* 794 S.W.2d 806, and an Amarillo Court of Appeals case, *Brumley v. State,* 804 S.W.2d 659 (Tex.App.1991, no pet.), have also rejected appellant's contentions.

Appellant cites a number of cases for the proposition that a defendant is entitled to an affirmative instruction on the law as to every defensive issue raised by the evidence. *See Johnson v. State,* 650 S.W.2d 414 (Tex.Cr.App.1983); *Armstrong v. State,* 653 S.W.2d 810 (Tex.Cr.App.1983).

In support of his position that he is entitled to the affirmative defense of necessity in the instant cases, appellant relies on *Johnson* and *Schermbeck v. State,* 690 S.W.2d 315 (Tex.App.1985, no pet.). Appellant contends that *Johnson* overrules *Roy v. State,* 552 S.W.2d 827 (Tex.Cr.App.1977). In *Roy,* the court held that the belief that one is in a "high crime" area would not raise the defense of necessity where the defendant is charged with the offense of unlawfully carrying a handgun on premises licensed for the sale of alcoholic beverages as prohibited by Tex.Pen.Code Ann. § 46.02 (1989). 552 S.W.2d at 831. In *Johnson,* the court stated:

We agree that to allow a defense of necessity whenever anyone "felt he was in a 'high crime' area," as claimed by the defendant in *Roy,* would violate the intent of Sec. 46.02, *supra.* We do not agree, however, that such reasoning demonstrates a legislative purpose to exclude the defense of necessity under Sec. 9.22(3), *supra.* A feeling that one is in a "high crime" area would not constitute a reasonable belief that carrying a weapon in violation of Sec. 46.02 is *immediately* necessary to avoid *imminent* harm, Sec. 9.22(1), and therefore would not raise the defense even if it is available.

An example of when the defense of necessity should be available can easily be imagined. V.T.C.A., Penal Code Secs. 9.33, 9.42 and 9.43 justify the use of deadly force for the protection of property or a third person. If an individual in his own home observed a situation that required taking protective action under one of those sections, but to take such action would require him to take a weapon covered by Sec. 46.02 to another location, such as his neighbor's yard, would his conduct in carrying a handgun or club to protect his neighbor from rape or robbery (Sec. 9.33), or to recover his neighbor's property (Sec. 9.43), or to recover his own property from a criminal who has fled beyond the victim's premises (Sec. 9.42), be subject to conviction for unlawfully carrying the weapon? Surely the legislature intended the defense of necessity under Sec. 9.22 to be available in such circumstances.

We hold the defense of necessity is not unavailable in a prosecution under Sec. 46.02, *supra,* as a matter of law. To the extent of conflict *Roy v. State, supra,* is overruled.

650 S.W.2d at 416.

We construe *Johnson* as holding that the defense of necessity is available only when the proffered evidence is relevant to the

**2.** *See Crabb v. State,* 754 S.W.2d 742 (Tex.App. 1988, pet. ref'd), cert. denied, 493 U.S. 815, 110 S.Ct. 65, 107 L.Ed.2d 32 (1989); *Erlandson v. State,* 763 S.W.2d 845 (Tex.App.1988, pet. ref'd), cert. denied, 493 U.S. 852, 110 S.Ct. 152, 107 L.Ed.2d 110 (1989); *Bobo v. State,* 757 S.W.2d 58 (Tex.App.1988, pet. ref'd), cert. denied, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989); *Hoffart v. State,* 686 S.W.2d 259 (Tex. App.1985, pet. ref'd), cert. denied, 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 46 (1986).

charged offense. We note that all of the examples given by the court that would justify an accused in using a weapon for protective action relate to preventing conduct that has never been approved by a court.

In *Schermbeck*, the court upheld the trial court's refusal to charge on the defense of necessity where the defendant prevented entry to a nuclear plant. The court noted that the defendant was aware that the plant was not operative at the time in question. The court concluded that the fact the plant would later be in operation did not constitute a reasonable belief that the defendant's action was immediately necessary to avoid harm. 690 S.W.2d at 317. We are unable to conclude that the court's holding constitutes authority for the proposition that the defense of necessity could have been raised had the plant been in operation at the time of the charged offense.

The court in *Brumley* succinctly addressed the availability of the necessity defense in the context of facts like the instant case as follows:

Subdivisions (1) and (2) of the statute contemplate a balancing between the harm arising from the conduct constituting the offense and the harm which the actor's conduct sought to avoid. If the harm to be avoided was clearly greater than the harm actually caused (the offense actually committed), the actor's conduct causing the offense is justified and he is exonerated. *See* Searcy & Patterson, Practice Commentary, Tex.Penal Code Ann. § 9.22 (Vernon 1974). *However, the predicate requirement for invoking this justification is that the harm the actor assertedly seeks to prevent must first be a legal harm.* Reed *v. State*, 794 S.W.2d 806, 810 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). There is nothing in this record to show that the doctor, his staff, or his patients acted otherwise than within the constitutional right of women to terminate their pregnancies recognized by the Supreme Court in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). This

Court must recognize that decision. Texas intermediate courts are *stare decisis* courts. As such, in an area where the law has been settled by a court of superior jurisdiction such as the Supreme Courts of the United States and this state, it is our bound duty to recognize and acquiesce in the decisions determining that law. Law making functions lie in the hands of our Legislature, Congress, and within certain limitations not applicable here, the Supreme Courts of our state and the United States.

804 S.W.2d at 661 (emphasis added).

We find nothing in the records before us to show that any doctor, nurse, staff member, or patient acted otherwise than within the constitutional right of women to terminate their pregnancies recognized in *Roe.*

■ To constitute reversible error resulting from exclusion of evidence, an appellate court must conclude the proffered evidence was relevant. *Bird v. State*, 692 S.W.2d 65, 73 (Tex.Cr.App.), cert. denied, 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1985). Since determination of the relevance of evidence is a matter within the discretion of the trial court, an appellant must demonstrate that the trial court's exclusion of the evidence amounted to an abuse of discretion. *Werner v. State*, 711 S.W.2d 639, 643 (Tex.Cr.App.1986). No error is shown when the evidence fails to demonstrate that the accused is entitled to the defense to which the evidence applies. *Reed*, 794 S.W.2d at 810. Assuming that the proffered testimony was admissible, the harm appellant asserts he sought to prevent was not a legal harm. *Brumley*, 804 S.W.2d at 661.

■ The fact that the record is devoid of proof that Reproductive Services was licensed under the Texas Abortion Facility Reporting and Licensing Act, Tex.Health & Safety Code §§ 245.001–.016 (Pamph.1991), does not affect the applicability of the defenses. Assuming that the clinic was not licensed, there is no showing that appellant was aware of this fact on the occasions in question. Moreover, the controlling issue is whether appellant obstructed entrances to the clinics. *Reed*, 794 S.W.2d at 811.

442

Points of error one through seven, nine, and eleven through thirteen are overruled.

■ In point of error ten, appellant asserts that the trial court erred in failing to grant appellant's request to instruct the jury on the defense of mistake of fact in cause no. 3–90–140–CR. Tex.Pen.Code Ann. § 8.02(a) (1974) provides:

It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact *if his mistaken belief negated the kind of culpability required for commission of the offense.*

(Emphasis added.)

Appellant contends that his testimony that he was attempting to save a human life raises the defense of mistake of fact and requires the court to submit his requested affirmative defense. We find the court's treatment of this issue in *Brumley* to be dispositive. In *Brumley,* the court stated:

In support of his argument, appellant relies on his testimony that he reasonably believed harm was occurring to mothers and their unborn fetuses. The phrase "kind of culpability" as used in the statute refers to the culpable mental state required in the offense with which a defendant is charged. *Beggs v. State,* 597 S.W.2d 375, 378 (Tex.Crim.App. [Panel Op.] 1980).

It is undisputed that appellant remained upon the premises after being requested to leave. No culpable mental state is required under the criminal trespass statute, Texas Penal Code Annotated § 30.05 (Vernon 1989 & Supp.1991), other than a volitional refusal to leave when requested. *Reed v. State,* 762 S.W.2d 640, 646 (Tex.App.—Texarkana 1988, pet. ref'd). Appellant's mistaken belief that he was legally justified in his obstructive tactic did not entitle him to a charge on mistake of fact.

*Brumley,* 804 S.W.2d at 662. Appellant's tenth point of error is overruled.

■ In his eighth point of error, appellant asserts that the court erred in granting the State's motion to quash subpoenas. Appellant sought records of Reproductive Services on the date of the offense charged in cause no. 3–90–140–CR. Appellant contends the records would reflect fetal or gestational age of fetuses scheduled for abortion on the date in question that were necessary to support his affirmative defenses. The court granted the motion to quash, finding that the evidence sought in the subpoenas was not relevant to any question in the case.

We conclude that appellant has failed to show the relevance of the information he sought to his affirmative defenses. Before a reviewing court may conclude that the trial court erred in excluding evidence, the appellant must demonstrate that the court's action constituted an abuse of discretion. *Werner* at 643. Appellant's eighth point of error is overruled.

■ In his fourteenth point of error, appellant contends that the evidence was insufficient to show that he was on property owned by Karen LaFayette as alleged in the information. In point of error fifteen, appellant asserts there was no evidence to support a finding that he received notice to leave the premises by the owner or one acting with apparent authority of the owner. Appellant and the State have combined these points for discussion and we address them accordingly.

Texas Pen.Code Ann. § 30.05(a) (1989) defines the offense of criminal trespass, in pertinent part, as follows:

(a) A person commits an offense if he enters or remains on property or in a building of another without effective consent and he:

(1) had notice that the entry was forbidden; or

(2) received notice to depart but failed to do so.

(b) For purposes of this section:

(1) "entry" means the intrusion of the entire body; and

(2) "notice" means:

(A) oral or written communication by the owner or someone with apparent authority to act for the owner;

(B) fencing or other enclosure obviously designed to exclude intruders or to contain livestock; or

(C) a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden.

Texas Pen.Code Ann. § 1.07(a)(24) & (28) (1974) defines "Owner" and "Possession" as follows:

(a) In this code:

(24) "Owner" means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor.

(28) "Possession" means actual care, custody, control, or management.

Karen LaFayette testified that she was the administrative assistant at the Ladies Center located in the building complex known as Medical Arts Square. LaFayette described the Medical Arts Square as a complex with twenty buildings that make a square around a parking lot. Access to the building is "by the front coming into the parking lot." Additional routes of access are in the back of the buildings for the physicians. A sign at the front of the parking lot states "private property" and that parking is for "employees and patients."

LaFayette testified that she was the "everyday office manager, just the general conducting of business"; that four people had keys to the building and she was the person in control of the keys. LaFayette related that on the day in question, Saturday, December 10, 1988, the Ladies Center was the only building open for business. She described the conditions that existed on that date, as follows:

Like I said, there were people blocking the back door, people blocking the front door, then there were people in the parking lot, people around—around both sides. All around the tree in the back alleyway there were people around, and on the other side of our building that does not have the door, it is just win-

dows, there were people mingling around in that area also.

LaFayette gave warnings at the front and back doors of the clinic. She asked the people to leave and advised them if they did not leave that they would be trespassing. When she gave the warning at the front door, LaFayette placed appellant's location as "standing not directly in front of me, but over the left some in front of the group." She had seen appellant on two prior occasions.

Austin Police Lieutenant Stewart testified that appellant "was in front of the crowd of persons that was blocking the doorway." Stewart, at LaFayette's request, advised the crowd that they had been warned to leave and not come back, that they were in violation of the criminal trespass statute, and, if they continued to remain on the premises, that they would be subject to arrest.

Stewart related that appellant attempted to make a deal with him relative to certain people leaving. Stewart advised appellant that he was not making any promises or deals, that everybody there had been warned and was subject to arrest at that time. Following this conversation, appellant began addressing the crowd, Police Captain Riffe and LaFayette attempted to enter the clinic, and people linked arms to prevent entry. At this point, Stewart related that Captain Riffe "advised me to start arresting."

Testimony of possession by persons alleged to be owners is generally sufficient to prove ownership in trespass cases. *Rogers v. State*, 455 S.W.2d 773, 776 (Tex.Cr. App.1970). In *Campbell v. State*, 626 S.W.2d 91, 92 (Tex.App.1981, no writ), the court held that in proving the elements of criminal trespass the testimony of the alleged owner or any other competent individual may be sufficient to make out a *prima facie* showing of ownership.

We conclude that LaFayette's testimony relative to her position and duties at the Ladies Center established ownership as that term is defined in Tex.Pen.Code Ann. § 1.07(a)(24). The relative position of appellant to LaFayette and Officer Stewart

**444**

when the warnings were given, along with appellant's response to Stewart, reflect that appellant received notice to leave the premises by the owner or one acting with apparent authority of the owner. *See* Tex. Pen.Code Ann. § 30.05.

Viewing the evidence in the light most favorable to the conviction, we conclude that a rational trier of fact could have found the essential elements of the offense raised by points fourteen and fifteen beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Cr.App.1989). Appellant's fourteenth and fifteenth grounds of error are overruled.

The judgments are affirmed.